## DAUGHERTY v. CANAL BANK & TRUST CO. IN LIQUIDATION et al.

### No. 1320.

Court of Appeal of Louisiana. First Circuit.
May 8, 1934.

See, also (La. App.) 151 So. 431.

Dufour, St. Paul, Levy & Miceli and Norton L. Wisdom, all of New Orleans, for appellant.

Rownd & Warner, of Hammond, for appellee.

ELLIOTT, Judge.

Mrs. Sarah C. Daugherty, née Corbett, wife of George F. Daugherty, beneficiary of a trust fund, established in her behalf by James H. Corbett, her father, brought suit against Canal Bank & Trust Company, trustee, to compel the delivery to her of the sum of $1,665.22 in its possession, alleged to be income of the trust estate.

The trust was originally established by James H. Corbett on June 6, 1916, with Armstrong County Trust Company of Kittanning, Pa., as trustee. The trust was to continue for a period of ten years from date. A condition of the trust agreement was that, if James H. Corbett should be living at the expiration of the ten years, then the fund was to be reconveyed to James H. Corbett.

Subsequently, by a further agreement entered into February 16, 1924, between James H. Corbett and Marine Bank & Trust Company of New Orleans, the Marine Bank & Trust Company agreed and undertook, at the expiration of the time fixed for the duration of the trust agreement that had been entered into between said Corbett and Armstrong County Trust Company, to take over and collect from Armstrong County Trust Company the trust estate and continue the trust in behalf of Mrs. Daugherty for another period of ten years. At the expiration of this trust, Marine Bank & Trust Company was to deliver the estate to Mrs. Daugherty.

The parties agree that James H. Corbett departed this life at his domicile in the parish of Tangipahoa on August 10, 1924; that Marine Bank & Trust Company took over the trust from Armstrong County Trust Company at the expiration of the ten-year period stipulated for that trust and administered same until July 3, 1928, when all the assets, deposits, business, and affairs of Marine Bank & Trust Company were assigned to and taken over by Canal Bank & Trust Company, which continued to administer the trust until April 18, 1933, when it was terminated by mutual consent and the estate delivered to Mrs. Daugherty, saving and except the sum of $1,665.22 representing income from the principal of the trust fund, which had been collected by Canal Bank & Trust Company and deposited to the credit of Mrs. Daugherty prior to March 1, 1933.

Canal Bank & Trust Company contends that it is prohibited from paying Mrs. Daugherty more than 5 per cent. of this amount, to wit, $83.26 for reasons which will be explained later. Mrs. Daugherty alleges that in view

of the condition, in the agreement between James H. Corbett and Marine Bank & Trust Company, that Marine Bank & Trust Company was to take over the estate from Armstrong County Trust Company and administer the trust, if the said Corbett was living at the expiration of the stipulated period of ten years, that Marine Bank & Trust Company had no right to take over the trust, her father having died before the stipulated time had expired; that, if said bank ever had the right to act as trustee, which is denied, then said sum of money was not held by said bank as part of its assets but merely as trustee for her, and that the payment and delivery of said sum to her would not operate as a discharge of any indebtedness of said bank and is therefore in no wise prohibited.

That if said bank did not have the right to act as trustee, and she alleges that it did not have such right, then said bank has been intermeddling in her father's succession without any right whatsoever to the possession or administration of the principal and income of said trust estate.

Under these averments the Canal Bank & Trust Company was ruled before the court to show cause why it should not be ordered to deliver to Mrs. Daugherty the said sum of $1,665.22, and in the alternative and only in case said bank should not forthwith deliver said money to her, she prays for judgment against the bank for $1,665.22 with interest and with recognition of a legal mortgage in her favor against all the property and assets of said bank to secure the payment of said amount.

Canal Bank & Trust Company for answer admits the important averments of fact, alleged in plaintiff's petition, except it alleges that Marine Bank & Trust Company and Canal Bank & Trust Company had the right to take over and administer the trust estate.

It admits, however, that James H. Corbett departed this life on August 10, 1924; that Marine Bank & Trust Company at the expiration of the ten-year period, stipulated in the agreement between James H. Corbett and Armstrong County Trust Company, took over the trust fund from Armstrong County Trust Company and administered the trust until July 3, 1928, when all the deposits, assets, business, and affairs of Marine Bank & Trust Company were taken over, assigned to and assumed by Canal Bank & Trust Company; that Marine Bank & Trust Company took over the trust fund and administered the same with the knowledge and consent of Mrs. Daugherty; and that she afterwards con-sented to and acquiesced in the assumption of the same by Canal Bank & Trust Company. Admits the termination of the trust on April 18, 1933, by mutual consent and the delivery of the principal of the estate to Mrs. Daugherty, and that at said time there remained in its hands the sum of $1,665.22, collected by it, representing income from the principal of said estate and deposited to the credit of Mrs. Daugherty prior to March 1, 1933.

It then sets up and defensively avers that it is a state bank, a member of the Federal Reserve Bank System; and that, as the result of certain proclamations on the part of the President of the United States, the Governor of Louisiana, regulations of the Treasury Department of the United States and of the State Bank Commissioner of Louisiana, it is prohibited from paying over to Mrs. Daugherty more than 5 per cent. of said sum, or $83.26.

It prays that the rule be recalled, and that plaintiff's demand be rejected.

The parties, at the same time this answer was filed, entered into and filed an agreement concerning the facts of the case. There are some other questions to be noticed and acted on, but the principal question is whether the proclamations of the President of the United States and of the Governor of Louisiana and the regulations of the Secretary of the Treasury of the United States and of the State Bank Commissioner of Louisiana, concerning state banks, members of the Federal Reserve System, particularly Regulation 27 of the United States Treasury Department, prohibit a trustee from delivering to the cestui que trust the income of a trust fund, received and kept separate as such from the funds of the trustee.

Before the case was submitted to the court, J. S. Brock, State Bank Commissioner, acting under the provisions of Act No. 300 of 1910, took charge of Canal Bank & Trust Company, closed its doors, and placed it in liquidation, placing H. G. Thompson in charge of the bank as his special agent. On June 6, 1933, Brock, State Bank Commissioner, under authority of the court became a party defendant in the case. The case was then submitted to the court, and the court rendered judgment in favor of Mrs. Daugherty as prayed for. J. S. Brock, State Bank Commissioner, has appealed.

 That part of the judgment, alternatively rendered, recognizing a legal mortgage to exist against the property and assets of the Canal Bank & Trust Company in favor of Mrs. Daugherty, is claimed by plaintiff in rule to have support in the provision of the

Civil Code, art. 3315, creating a legal mortgage on the property of persons, who, without having been appointed curator of an absent person, interfere in the administration of the absent person's estate. The Civil Code, art. 3312, provides that no legal mortgage shall exist, except in the cases determined by the present Code. In order that a legal mortgage may be claimed under the Civil Code, art. 3315, the registry provided for by the Civil Code, art. 3355, must have been made. It is not claimed that any was made. The lack of registry prevents the existence of the mortgage claimed, but a less arbitrary reason is the fact that Canal Bank & Trust Company in taking over this trust estate from Marine Bank & Trust Company and administering the trust was not an intermeddler within the meaning and contemplation of the Civil Code.

The record shows a petition presented to the district court of the parish of Tangipahoa by Canal Bank & Trust Company and Mrs. Daugherty jointly in which they allege to the court that "Marine Bank & Trust Company took possession of said trust fund with the consent and approval of the said Mrs. Sarah C. Daugherty and administered the same until July 3rd, 1928, when it was taken over by petitioner, Canal Bank & Trust Co.; that Canal Bank & Trust Co. was recognized and appointed as successor trustee of Marine Bank & Trust Co. by order of this court, dated Feb. 11th, 1930, and has since administered the said trust fund to this date." Following this petition Mrs. Daugherty entered into an agreement with Canal Bank & Trust Company as trustee on April 18, 1933, in which she recognized its capacity as such toward her. There is no foundation for the claim that Canal Bank & Trust Company, within the sense and meaning of the Civil Code, interfered with the administration of the trust fund in question. It acted under the color of right and believed it had a perfect right to take over and administer the fund. The judgment appealed from to the extent that it alternatively recognizes the existence of a legal mortgage on the property of Canal Bank & Trust Company will therefore be annulled, avoided, and set aside and plaintiff's demand on that subject rejected.

■ The parties have not pleaded that the trust fund was by the trustee commingled with its own funds, but there is argument as if it had been done, and the agreement concerning the facts of the case contains a stipulation that if a certain party were called as a witness in the case, he would testify that it was done. This admission is, however, overcome by an admission in defendant's answer, sworn to by its vice president, and by the further direct stipulation as to the facts to be taken as proved, according to which should anybody so testify, his testimony would be contrary to the admitted fact. Therefore it cannot be assumed that anybody would be called for such a purpose. The admission in defendant's answer is as follows: "Art. 9. Respondent admits, that, at the time of the termination of the trust agreement on April 18th, 1933, there was in its hands the sum of $1,665.22, representing income from the principal of said trust, which amount respondent collected and deposited to the credit of petitioner prior to March 1st., 1933."

The case was submitted to the court under an agreement:

"That the following facts should be considered as having been proved without the necessity of offering formal proof thereof:

"Art. 6. That on March 1st., 1933 there was in the hands of Canal Bank & Trust Co. the sum of $1,665.22, representing income from the principal of said trust, which amount respondent collected and deposited to the credit of petitioner prior to March 1st, 1933.

"Art. 7. That subsequent to March 1st, 1933 petitioner made demand on petitioner (should say Canal Bank & Trust Co.) to pay over the said funds amounting to the sum of $1,665.22 but Canal Bank & Trust Co. refused to comply with said demand, contending, that it was prohibited from paying more than 5% of said amount to-wit, the sum of $83.26, which amount it offered to pay petitioner but which she refused to accept."

Further stipulations of fact are to the effect that Canal Bank & Trust Company is a member of the Federal Reserve Bank System and as such is subject to all the laws, rules, and regulations governing Federal Reserve Banks. Proclamations of the President of the United States and of the Governor of the State of Louisiana, resolution by the New Orleans Clearing House Association, regulations of the Secretary of the Treasury of the United States, particularly Regulation No. 27, and regulations put in force by J. S. Brock, State Bank Commissioner of Louisiana, are enumerated.

The agreement concludes with stipulation No. 21: "It is further agreed, that if Mr. Junket, Assistant Trust Officer of the Canal Bank & Trust Co., were present and sworn as a witness in this case, he would testify that the sum of $1,665.22, the subject matter of this suit, was not carried by the Canal Bank & Trust Co. as a part of its assets, and that, if paid out to Mrs. Daugherty by said

bank at this time, such payment would not operate to discharge, as a whole or in part, any indebtedness as distinguished from any trust or other fiduciary duty of said Canal Bank & Trust Co.; and that the said Junket would also testify, that the funds in question were not segregated and were co-mingled with other funds of the Canal Bank & Trust Company; that the Trust Department of the Canal Bank & Trust Co. kept a separate account of the said funds, and that all checks, drawn in payment of the fund, were signed by the Trust Officer of the Canal Bank & Trust Co."

This agreement that Mr. Junket would, if called as witness, swear that the funds in question were not segregated and were commingled with other funds of the Canal Bank & Trust Co. is the basis of defendant's argument that this income of the trust fund was by the trustee commingled with its own funds and that the cestui que trust was thereby deprived of her money, except such pro rata share as may fall to her as an ordinary creditor of the bank. But the admission, in article 9 of defendant's answer, that at the termination of its trust on April 18, 1933, this $1,665.22 was in the hands of the trustee, representing income from the principal of said trust fund, collected and deposited to the credit of Mrs. Daugherty, and the fact agreed to by the parties, as set forth in article 6 of their agreement as to facts, that on March 1, 1933, there was in the hands of Canal Bank & Trust Company this identical sum of money, representing income from the trust fund in question, which the trustee had collected and deposited to the credit of Mrs. Daugherty, the admitted fact completely overcomes the effect of the admission as to what a witness would swear, if called. The admitted fact in defendant's answer, sworn to by its vice president, and the fact formally agreed to by both parties, are accepted as true. The admitted fact is also in keeping with the mandate of the law, Act No. 107 of 1920, § 6, which requires a trustee to keep the trust estate separate and apart from its individual funds.

The parties agree in article 21 of their stipulation of facts that this $1,665.22 was not carried by the Canal Bank & Trust Company as a part of its assets; that, if same were paid to Mrs. Daugherty by said bank at the time of entering into the agreement, such payment would not operate to discharge, as a whole or in part, any indebtedness as distinguished from any trust or other fiduciary duty of said Canal Bank & Trust Company; that the Trust Department of the Canal Bank & Trust Company kept a separate account of the said funds; and that all checks drawn in payment of the fund were signed by the trust officer of the Canal Bank & Trust Company.

Defendants assuming that the admission as to what the assistant trust officer of Canal Bank & Trust Company would swear, if called as a witness, about the nonsegregation of the funds in question and the commingling of same with the funds of the bank, would be taken as establishing the commingling, cites us to the case, Young v. Teutonia Bank & Trust Co., 134 La. 879, 64 So. 806, and other cases. Controversy caused by commingling is not unusual. Sabine Canal Co. v. Crowley Trust & Savings Bank, 164 La. 33, 113 So. 754; Ruling Case Law, vol. 3, subject, Banks, § 180, p. 552 et seq.; same author, vol. 26, subject, Trusts, § 218 et seq., p. 1354 et seq.; same author, Permanent Supplement, vol. 2, subject, Banks, § 180 et seq., p. 837 et seq. and vol. 8, subject, Trusts, § 218 et seq., p. 5874 et seq.; Corpus Juris, vol. 65, subject, Trusts, §§ 891, 894, 899, 900, 967, 968, 969, etc.; Perry on Trusts and Trustees, vol. 2, § 838; Central National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; First National Bank v. Littlefield, 226 U. S. 110, 33 S. Ct. 78, 57 L. Ed. 145; Gorman v. Littlefield, Trustee, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047; Schuyler v. Littlefield, Trustee, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; Hungerford v. Curtis, 43 R. I. 124, 110 A. 650, 12 A. L. R. 1040 with annotations. But all these references and cases consider questions where a commingling had taken place and the effect which it had on the rights of the cestui que trust. In this case there has been no commingling. We therefore do not undertake to decide what the effect would have been on the right of Mrs. Daugherty to compel Canal Bank & Trust Company in Liquidation to deliver to her this $1,665.22, had it been commingled by the trustee with its own funds. It is sufficient to say it was not done. So the argument on the subject must be put aside.

■ Defendant contends that banks, as trustees, are not subject to the provision in section 6 of Act No. 107 of 1920, requiring trustees to keep trust funds separate and apart from their individual funds; that this provision applies to individuals, who become trustees, and in support of his argument directs our attention to section 1 of the act, in which it is said: "That, it shall be lawful for any one to make a donation Inter Vivos or Mortis Causa of any kind of property, and of any amount, whereby an individual or individuals or, a bank or banks," etc.

A corporation is "an intellectual body" and

"natural person." Civil Code, art. 427. "Corporations legally established are substituted for persons" and have contractual rights like persons. They may "manage their own affairs; appear in courts of justice, and even enact statutes and regulations for their own government." "Corporations are intellectual beings." Civil Code, arts. 433 and 435. We understand the term, "their individual funds," as used in section 6 of the act, to refer to all trustees, incorporated banks as well as persons, who are trustees. The law makes no distinction between them in the matter of the duty of keeping the funds in their names, as trustees, separate and apart from their individual funds.

■■ The substantial question is whether the proclamation of the President of the United States and regulations of the Treasury Department of the United States, particularly the regulation of March 19, 1933, designated as Regulation No. 27, and proclamations of the Governor of Louisiana and regulations of the State Bank Commissioner prohibit a state bank, member of the Federal Reserve System, engaged in administering a trust fund, from paying the cestui que trust more than 5 per cent. of a sum of money, the income of the trust fund, collected by it and kept separate on its books from its individual funds. These proclamations and regulations all refer to the assets, funds, and property of the banks. They have no effect to prohibit a trustee from delivering to the cestui que trust a sum of money in the hands of a trustee, which it collected and received as trustee for the beneficiary of the trust and which has been kept separate on its books from its individual funds. J. S. Brock, State Bank Commissioner of Louisiana, H. G. Thompson, special agent, and J. S. Finke, liquidator, have no more right to withhold this money from Mrs. Daugherty than the Canal Bank & Trust Company.

■■ The Constitution of 1921, art. 4, § 16, providing that the Legislature might authorize the creation of trust estates, and Act No. 107 of 1920, passed under this authority, had in mind the tenure, which trusts imply and have under the common law as recognized in England and the United States. The tenure is entirely different from the ownership, provided for in our Civil Code, title 2, art. 488 et seq. But the trust agreement between Corbett and Marine Bank & Trust Company is to be understood and enforced in conformity with the intent of the parties and as provided for in our Civil Code, art. 1945 et seq., and according thereto the trustee did not become the owner of this income.

There is no claim in the answer of the defendants that it became the property of the bank or that the bank has a claim on it of any kind. It is clear that the bank, acting in its capacity of trustee, collected and received it as the income of the trust fund of which it had the administration in harmony with the act of February 16, 1924, passed before A. W. Spiller, notary public, in which James H. Corbett, the owner, delivered to the Marine Bank & Trust Company, as trustee, under the terms of Act No. 107 of 1920, the deed of trust that had been entered into between him and Armstrong County Trust Company.

The agreement obligated the Marine Bank & Trust Company to administer the estate and collect and deliver the income to Mrs. Daugherty. At the termination of the trust period, the estate was to be delivered to Mrs. Daugherty. When, by mutual consent, the trust was terminated and the agreement canceled, the income, the earnings of the trust fund, belonged to Mrs. Daugherty and should have been delivered to her with the principal of the fund. Such is now the duty of the State Bank Commissioner, his agents, etc. We therefore conclude that Canal Bank & Trust Company in Liquidation, J. S. Brock, State Bank Commissioner of Louisiana, H. G. Thompson, his special agent, and J. F. Finke, liquidator in charge of said bank, should deliver said sum of money to Mrs. Daugherty as ordered by the lower court.

There is a statement in defendants' brief that Mrs. Daugherty has received $525.80, as a liquidating dividend, since the judgment appealed from was rendered. We find no showing to that effect, save as stated; but if the amount mentioned has been received, the defendant is entitled to credit accordingly.

The judgment appealed from, to the extent that it recognizes, alternatively, the existence of a legal mortgage in favor of Mrs. Sarah C. Daugherty on the property and assets of Canal Bank & Trust Company, is annulled, avoided, and set aside, and plaintiff's demand is in that respect refused and rejected, but to the extent that Canal Bank & Trust Company in Liquidation, J. S. Brock, State Bank Commissioner, H. G. Thompson, special agent in charge of said liquidation, are ordered and commanded to immediately deliver to Mrs. Sarah C. Daugherty the said sum of $1,665.22, without interest, in possession of the bank as income of the said trust estate, the judgment appealed from is affirmed. Defendants and appellant to pay the cost in both courts.